# HILLSBOROUGH,

## DECEMBER TERM, A. D. 1846.

### EATON *v.* STRAW.

A testator gave to his daughter, H. S., and to her heirs, all his property, real and personal, after paying his debts and funeral charges; but in case she should die and leave no issue, so much of his real estate as she should not need for her support, during her natural life, he gave to J. S., by his paying $200 to the daughter of a nephew; and in case J. S. should die and left no issue, then the property to go to the lawful heirs of the testator. H. S. died before the testator, without issue;—*Held*, that this devise to H. S. did not constitute an estate tail, but that H. S., if she had lived, would have taken a fee, defeasible upon her dying and leaving no issue at her decease, with a power to her to sell and dispose of so much of the property as should be necessary for her support; and that J. S. would have taken, by executory devise, in the event of her death, leaving no issue. *Held, farther*, that H. S., having died in the lifetime of the testator, J. S. took the property, under the will, by an original devise, as if no devise had been made to her. There was no repugnancy in the limitation over to him, to the prior estate which she would have taken had she survived the testator. Whether, in case the estate given to her would have been repugnant to the limitation over, in case she had survived, that would have prevented J. S. from taking by original devise, she being dead, *quære*?

There can be no limitation over, after an absolute devise in fee simple; but an attempt to constitute a limitation over, after language which might otherwise be construed to convey an absolute fee, may serve to give a construction to that phraseology, and show that such an estate was not intended.

A general power of disposition, existing as a power, does not imply ownership, but excludes the idea of an absolute fee simple in the party who possesses the power. Whether there may not be a limitation over, after the devise of an estate less than a fee simple, with a general power of disposition superadded, *quære*?

Eaton *v.* Straw.

There may be a limitation over after the devise of a defeasible fee, with a limited power of disposition ; even if, by the exercise of such limited power, the property may, by possibility, be exhausted.

WRIT OF ENTRY, to recover one ninth part of a tract of land in Deering, submitted to the decision of the court upon the following statement of facts :

Jonathan Straw, late of Deering, died seized of said tract of land, on the 24th day of April, 1843, leaving no lineal heirs.

His next of kin and heirs at law were the plaintiff, who was a sister of the testator, and eight other brothers and sisters, or their representatives.

The plaintiff is entitled to recover one ninth part of said tract of land, unless the devise to James Straw, the defendant, hereinafter mentioned, is valid.

On the 18th of August, 1841, Jonathan Straw made and executed his last will, of that date, which has been duly proved and allowed by the court of probate for said county, by which he devised his real estate in the words following :

"First, I give and bequeath unto my daughter, Huldah Straw, my only child, and to her heirs, all my property, real, personal and mixed, after paying all my debts and funeral charges ; but in case she should die and leave no issue, so much of my real estate as she shall not need for her support during her natural life, I give and bequeath to James Straw, of Weathersfield, in the county of Windsor and State of Vermont, and son of Reuben Straw, my nephew, by his paying two hundred dollars to Huldah Straw, of Strafford, in the county of Orange and State of Vermont, daughter of Joseph Straw, my nephew ; and in case said James Straw should die and leave no issue, then the property to go to my lawful heirs."

Huldah Straw, the testator's daughter, died before the decease of the testator, leaving no issue. If the court

should be of opinion that the devise of James Straw is valid, judgment is to be rendered for the defendant, otherwise for the plaintiff for one ninth part of said tract of land.

*James Bell*, (with whom was *T. Brown*), for the plaintiff.

1. The devise to James Straw is not a good contingent remainder, because the estate given to Huldah Straw is a fee simple, upon which a fee cannot be limited, and not an estate tail. The fee simple, given to Huldah and her heirs, is not restricted or cut down to a fee tail by the devise over, "in case she should die and leave no issue"; but is a fee simple estate, defeasible upon the contingency of her having no issue living at the time of her death; and James Straw, therefore, if he can take at all, takes the estate as an executory devise, and not (as he might if there was a precedent estate tail to support the subsequent estate), as a contingent remainder.

This devise does not create an estate tail in Huldah Straw, because several clauses in the will show that the testator, by the words, "shall die and leave no issue," did not intend an indefinite or general failure of issue, but without issue living at the time of her death. "So much of the estate as Huldah does not need for her support," only, is devised over, which has reference to the state of things at the time of her death. The case as to this point falls directly within the reasoning of Chief Justice *Parsons* in the case of *Ide* v. *Ide*, 5 Mass. 500.

It is a familiar rule, that any language showing that the testator, making a limitation of this kind with words of inheritance, has reference to the fact of there being children or issue at the time of his decease, will be constructed to create a fee simple, if the devisee leaves children or issue. 4 Kent's Com. 273, 277, (citing the leading case of *Pells* v. *Brown*, Cro. Car. 500); *Doe* v. *Witton*, 2 B. & P. 324; *Porter* v. *Bradley*, 3 T. R. 143; *Hughes* v. *Sa-*

*yer,* 1 P. Will. 533; *Moffatt* v. *Strong,* 10 Johns. 12; 4 Kent 277; *Roe* v. *Jeffrey,* 7 T. R. 589; *Doe* v. *Webber,* 1 B. & Ald. 713; *Morgan* v. *Morgan,* 5 Day 517; 16 Johns. 382, *Jackson* v. *Chew;* 12 Wheat. 153.

2. That the power of disposition in the first devisee renders void the executory devise, is clearly established, and results from the principle that an executory devise, though subject to the contingency upon which it is to take effect, is for all other purposes recognized in law as a determinate and indefeasible estate. It may be conveyed or devised, and is not, like a contingent remainder, liable to be defeated by the first devisee. *Moffat* v. *Strong,* 10 Johns. 12. It is essential to its nature that it should not be within the control of the devisee who first takes the estate. That the power of alienation renders the executory devise void, see *Attorney General* v. *Hall,* Fitzg. 314; *Ide* v. *Ide,* 5 Mass. 500; *Jackson* v. *Bull,* 10 Johns. 19; 1 Ves. 9; 16 Johns. 537, *Jackson* v. *Robins.*

3. The subsequent death of Huldah Straw, in the lifetime of the testator, does not give validity to the devise over which was originally void. It is a question of construction of the will, which nothing subsequently occurring can affect, and which must be the same as it would have been if the court had been called upon to give it a construction the very day after its execution.

This must, from the nature of the case, rest mainly upon the general rules applicable to the construction of all instruments.

The most common cases of void executory devises are of those which are void because too remote, and to these most of the cases relate, but so far as this position is concerned, it is immaterial from what particular defect the devise over fails. Fearne. Con. Rem. and Ex. Dev. 417. *Burbank* v. *Whitney,* 24 Pick. 146, which was a bequest of personal property to the testator's wife, with full power to do with it as she pleased; " but whatever she should die

possessed of, unless she should otherwise order, I would have equally divided" among several societies, &c., will not be found to be sustained by the cases cited by the court as the foundation of their opinion.

*S. D. Bell*, for the defendant. 1. The devise to H. S. is, in terms, a devise in fee at common law. The limitation over, in case she should die and leave no issue, would reduce her estate to an estate tail, with a remainder over to J. S. (limitation over, if he should die and leave no issue, enlarging his life estate to an estate tail, or cutting down his fee simple to an entailed estate.) On this view of the case, the devise in tail to Huldah Straw having failed, by her death without issue, the devise to James Straw immediately took effect. It is the every day case of an estate tail, with a remainder over in tail.

If entails exist here, of which there is no doubt, the language used clearly shows an intention to create such estate.

When the person to whom any estate is devised is dead, or for any reason is incapable of taking the estate at the death of the testator, it is as if no such devise had ever been made, and the property vests in the heir, or subsequent devisee. Lovelass on Wills 445; Jarman's Powell on Devises 196, 200; *Avelyn* v. *Ward*, 1 Ves. senr. 420; *Willing* v. *Baine*, 3 P. W. 113; *Haughton* v. *Harrison*, 2 Atk. 329; *Dunell* v. *Molesworth*, 2 Vern. 378; *Walker* v. *Main*, 1 Jac. & W. 1; *Ledsome* v. *Hickman*, 2 Vern. 611; Jarm. Pow. D. 203; Fearne Ex. Dev. 509; *Brown* v. *Higgs*, 4 Ves. 718, n.; *Scatterwood* v. *Edge*, 1 Salk. 229; *Jones* v. *Westcomb*, 1 Eq. Ab. 245; 12 Mod. 128; *Hopkins* v. *Hopkins*, Cas. T. Talbot 44; *Andrews* v. *Fullam*, cited 1 Ves. senr. 421; 1 Wils. 107; 3 Burr. 1624; *Gulliver* v. *Wickett*, 1 Wils. 105; *Avelyn* v. *Ward*, 1 Ves. senr. 420; *Simpson* v. *Vickars*, 14 Ves. 341; *Hayward* v. *Stillingfleet*, 1 Atk. 422.—*Roe* v. *Fludd*, Fort. 184, *contra*, has been repeatedly overruled.

We contend that if we regard this will at common law, and suppose that the testator had deceased before his daughter, the true construction is that the daughter took an estate tail in possession, and the nephew a vested remainder in tail.

The terms of the will, "to my daughter H. S., and her heirs," would give her a fee simple, if standing alone. But the rule is settled that if, after such a devise, another estate is limited on failure of issue, as is this case, "if she should die and leave no issue," the estate is an estate tail only. *Ide* v. *Ide*, 5 Mass. 500 ; *Hawley* v. *Northampton*, 8 Mass. 3 ; *Burnet* v. *Denniston*, 5 Johns. Ch. 25.

So far as we are aware there is no statute in this State directly abolishing entails. Indeed, the statute of June 30, 1837, (reënacted Revised Statutes, chapter 120, section 1,) recognizes their existence, and provides a mode of docking the entail without recourse to the old mode of fine and recovery, which has been resorted to within a recent period.

2. We are prepared to contend that the estate given to the daughter would have been a fee simple. The devise over in this case is a good executory devise. We admit the rule to be, that a devise over after an indefinite failure of issue is too remote, and the courts, in cases of devises of real estate, lean against limiting phrases to mean a failure of issue at the death of the person whose issue are alluded to. Common sense cannot but approve of the decisions of the courts in the case of personal estate which lean in favor of giving that construction. No man but a lawyer would ever dream that a testator meant any thing else by "leaving no issue," than leaving no issue at the time of her death. But it is not necessary to contend for this doctrine as to real estate in this case. The decisions are clear, that if there are expressions which show that the party intended to limit the estate over, upon an event which must happen within a life or lives in being, the

devise over is good. Such are *Pells* v. *Brown*, Cro. Jac. 590; 1 Eq. Cas. Ab. 187; 2 Rol. 216; *Roe* v. *Jeffrey*, 7 D. & E. 589; *Doe* v. *Webber*, 1 B. & A. 713; *Porter* v. *Bradley*, 3 D. & E. 143; *Hanbury* v. *Cockerill*, 2 Rol. Ab. 435; *Doe* v. *Witton*, 2 B. & P. 324; *Doe* v. *Rawding*, 2 B. & A. 441; *Long* v. *Blackall*, 7 D. & E. 100; *Jackson* v. *Christman*, 4 Wend. 277; N. Y. Dig. 329; *Jackson* v. *Thompson*, 6 Cow. 178; *Wilkes* v. *Lyon*, 1 Cow. 333; *Doe* v. *Frost*, 3 B. & A. 546; *Lytton* v. *Lytton*, 4 B. C. C. 441; *Trafford* v. *Boehm*, 3 Atk. 449; *Oakes* v. *Chalfont*, Pol. 38; *Fletcher's Case*, 1 Eq. Cas. Ab. 193, pl. 10; *Doe* v. *Fonnereau*, 2 Doug. 487; *French* v. *Cuddell*, 6 Bro. P. C. 58; *Sheffield* v. *Lord Ossory*, 3 Atk. 287.

In this case the evidence is as clear that the estate devised to James Straw must take effect in a life in being, as in any of the cases cited.

The phrase, "so much of my real estate as she shall not need for her support," shows that the devisor had reference to the failure of issue at her decease.

James Straw becomes entitled to the estate devised over, by paying to H. S., of S., $200. This is a condition to be performed, and it can only be performed during the life of H. S. It is too evident to be discussed, that the testator could not have intended a payment of $200 to H. S., or her representatives, ages after his decease.

It is not necessary for us to deny the doctrine of the cases which decide that a power of disposing of the property given to the first devisee defeats the devise over, as inconsistent with the nature of such devise, which defeats any alienation. This case does not come within the principle.

There is no authority or power of disposing whatever is given here. "What she shall not need for her support" gives no power to convey, if not given by the will before. Suppose the will had in terms authorized the first devisee to convey so much as she should need for her support, and

she had done so. The devise over would be defeated as to so much as was conveyed, but the residue would not be affected. The power extends, at the utmost, to so much as is needed. Suppose the first devisee had the power to raise so much money as she needed for her support, by a mortgage of the property, so far as this incumbrance goes the devise over would be defeated, but it would not be affected beyond that.

3. Where a prior devise is defeated by the death of the devisee during the life of the testator, the devise over takes effect as if the earlier had been omitted. The will does not speak till the death of the testator. The state of the facts existing at the making of the will may be referred to, to ascertain the intention of the testator, but the words of the testator — their meaning being ascertained — are to be applied to the property and persons as they exist at the decease, in such a manner as to carry the design of the testator into effect.

Here, upon the decease of the testator the estate given to the daughter is gone; the object is defeated. The daughter is dead, without issue, and she has needed none of the estate. The very case has occurred which the testator had in his mind when he made his will.

It is justice to call the wire drawings of the courts of England on this subject absurd. Wills are supposed to be drawn without counsel, and yet, in their construction, principles are applied so artificial, arbitrary, and finespun, that no testator could ever have been supposed to know about them, or to have drawn his will with reference to them.

As to the effect, in case of lapse, upon subsequent limitations, the court are referred to Fearne Ex. D. 517, 509, 237; Lovelass's Wills 445; *Ledsome* v. *Hickman*, 2 Vern. 611; *Avelyn* v. *Ward*, 1 Ves. senr. 420; *Jones* v. *West_comb*, 1 Eq. Ab. 245; *Scatterwood* v. *Edge*, 1 Salk. 229; *Hopkins* v. *Hopkins*, Cas. T. Talb. 44.

*Perley*, on the same side. Suppose Huldah Straw, if she had lived, would have taken a fee. The testator must have contemplated the possibility of her decease in his lifetime. What difficulty is there in holding this in effect as a devise : If she die in my lifetime then I give the same to James Straw, &c.

It may be regarded as a devise to her for life, with a power to dispose of so much as might be necessary for her support, and the words of inheritance controlled by the subsequent words.

The intention is clearly expressed, that if the devise to Huldah does not take effect, it was to go over. He meant that if the estate did not go to the benefit of Huldah, two hundred dollars of it should go to another person of the same name, and that the defendant should take subject to that.

*J. Bell*, in reply. If James Straw takes an interest; it must be either a contingent remainder or an executory devise.

It is equally clear that if he takes at all it must be by way of executory devise. But he cannot so take, because of the power of disposition given to the first devisee. 2 Ves. 722 ; 3 Dougl. 4.

PARKER, C. J. The devise in this case does not constitute an estate tail. It seems clear that the testator did not intend to constitute such an estate. There are sufficient circumstances to show that by the phrase, " in case she should die and leave no issue," he intended issue living at the decease of Huldah Straw, and not any indefinite failure of issue. *Hall* v. *Chaffee*, 14 N. H. Rep. 215 ; 3 Myl. & Craig 127, 153, and note. If the phraseology might, in some connections, be construed to mean an indefinite failure of issue, against its plain and ordinary import, the devise to Huldah Straw, the daughter, which

appears to authorize her to appropriate so much of the property as she should need for her support, and the limitation over to the defendant being, in effect, of what she shall not need for her support, in case she should leave no issue, tends very strongly to show that the devise over was to take effect, if it ever became effective, at her decease; and especially is this apparent, when he couples the devise over to the defendant with a condition by which he is to pay $200 to Huldah Straw, the daughter of Joseph Straw, a nephew, which, of itself, is sufficient to show that an indefinite failure of issue was not intended. 1 B. & Ald. 713, *Doe* v. *Webber.* Superadded to this is a further provision, that in case of the death of the defendant, without issue, the property shall go to the testator's lawful heirs. This serves to show that the testator contemplated that the final disposition of the property, under the special provisions of the will, would take place on the decease of the daughter and of the defendant, at which time, if not taken under the will by the issue of Huldah Straw, at her decease, or by the issue of the defendant, upon his decease, the will gave it to the right heirs of the testator, and of course ceased to operate further upon it.

Here is somewhat more than enough to show that a definite failure of issue, on the decease of the daughter, Huldah Straw, was intended; and the case is another instance to show the ordinary meaning of a testator, when he provides for a further disposition of his estate, if the first taker shall die and leave no issue, and nothing is superadded to aid in the construction of that phraseology. The testator in this case would doubtless have intended a limitation over at the same point of time, if he had made a simple limitation over, in such words, without any of the special circumstances which tend to fortify their common meaning.

There is nothing, then, in the language of this will to require us either to follow the course of decisions upon

that subject which have, in so many cases, defeated the intention of testators, by substituting, through the application of an artificial and technical rule of law, a different estate from that which the testator intended; or to determine that the law is "more honored in the breach than in the observance" of those decisions. There is authority enough of a contrary character to justify this latter conclusion.

It may be proper to suggest, farther, that on the supposition that estates tail (which are not in accordance with our laws, generally, for the disposition of property), should be abolished here, it would no longer be possible to follow those decisions, because the will could not be construed to give an estate which the law did not permit to exist, without destroying the provision itself. But no court could say, in such a case, that the provision of the will was void because it constituted an estate tail, when in fact the testator never contemplated the constitution of such an estate, and the will was capable of a different construction.

There can be no reasonable doubt respecting the intention of the testator in this case. He designed to give all his estate to his daughter; but in relation to his real estate what she should not need of it for her support was, on her decease, if she left no issue, to go to the defendant, he paying $200 to a daughter of a nephew of the testator, giving his daughter in effect, in that contingency, a life estate in the real property, with a power of alienation, so far as should be necessary for her support.

It is the duty of the court to sustain this intention of the testator, if it may be done without violating legal principles. The question is, whether this intention can be carried into effect consistently with the rules of the law.

It is clear that there can be no limitation over after a devise of an absolute fee simple. If the whole estate has passed, unconditionally, there is nothing left to limit over.

Eaton *v.* Straw.

But there may be a devise of defeasible fee simple, and the limitation over of another fee upon the happening of the event which defeats the first. It is the common case, of an executory devise; and the inquiry arises, in every case where a testator makes a limitation over afterwards which may import a fee, whether the first disposition is in fact an absolute fee, so that the limitation over is void, or whether that disposition is only of a defeasible fee; and the limitations may have an operation in giving a construction to the preceding clause.

There are authorities to show that there can be no limitation over where there is a general power of disposition in the first taker, because such limitation over is inconsistent with or repugnant to the power.

This is certainly not a necessary result from any legal principle, for a general power of disposition does not necessarily imply ownership. In fact, the existence of such a power, as a technical power, excludes the idea of an absolute fee simple in the party who possesses the power. The absolute fee simple, including and involving the power of disposition, no technical power, as a mere power, could exist in the same party, separate from and independent of it. It would be preposterous for the owner of an absolute estate in fee simple to make a conveyance of his estate, under a technical power over it, even if the language in which the constitution of a power is usually expressed were superadded to the conveyance in fee by which he took his estate.

There is nothing incongruous, however, in holding that the gift of such a power, superadded to language which might otherwise be construed as conveying an absolute fee, tends to limit the preceding phraseology, so that it is not to be construed as creating such an estate.

But it is not necessary in this case that we should controvert the opinion that there can be no limitation over, after the gift of a general power of disposition of an estate.

This will gave to Huldah Straw neither a fee simple absolute nor a general power of disposition over the property. In the same clause by which he gives the property to her and her heirs, after paying his debts and funeral charges, is the provision, but in case "she should die and leave no issue, so much of my real estate as she shall not need for her support during her natural life, I give and bequeath to James Straw," &c. It is clear from this that he did not intend that she should have such a fee or power as would give her the general ownership. But if she had lived she would have had, by implication, a power of disposing of so much as she should need for her support.

It is as if he had said, "I give my real estate to my daughter, Huldah Straw, in fee simple, which fee is to be defeated by her death without issue, living at that time. But I give her the power of disposing of so much of the property as she may need for her support, even if the fee given to her is defeated by her death without issue. If she dies without issue, I give what she shall not have disposed of under this power to James Straw," &c.

Upon this construction it appears not only that she was not to have an absolute fee, but that her power of disposition was not to be a general power. It *was to be* a power limited to what she should need for her support, and so the limitation over to the defendant is good, within all the decisions upon that point.

Had she lived and undertaken to exercise the power, the question might have arisen, whether the necessity was commensurate with the attempt, which serves to show that the power was not a general but a limited power.

This devise over to the defendant is not to be held void, because, in the exercise of her power, she might, if her need had required it, have defeated the devise over to him by a disposition of the whole of the property. That does not show the power to be a general one. It merely proves that a limited power might possibly have exhausted the property.

On this construction, also, the devise to the defendant is good as an original devise, (Huldah Straw having died in the life time of the testator,) even within the authorities cited by the plaintiff's counsel. Some of those cases are to the effect that if the limitation over would have been void, because repugnant to the first disposition, provided that took effect, it cannot be good as an original devise, notwithstanding the first disposition becomes nugatory by the death of the first devisee, and the consequent lapse of the devise.

Aside from authority, this is certainly not a necessary result. Supposing the devise to Huldah Straw to have been beyond question a fee simple absolute, and that the limitation over to the defendant, in case of her death without issue, would have been repugnant and void, if Huldah Straw had survived the testator, because of the repugnance. On what principle must it be held void, she, having died in the testator's life time, the devise to her having thereby lapsed, and there being at his death therefore no repugnancy. The will becomes operative at the death of the testator. Before that time it had no vitality. So long as the will had no operation, the repugnancy was but a possibility. If Huldah Straw had survived the testator, she would, in the case supposed, have taken an absolute fee, and the devise to the defendant would have been void, because the estate which purported to be given to him was repugnant to the estate which vested in her, and for that reason alone. By her death, in the life time of the testator, leaving no issue, no part of the will became effective, to which the devise to the defendant could be repugnant, and the reason why the devise to the defendant should be void seems to fail altogether.

On the supposition, therefore, that there would have been a repugnancy if Huldah Straw had survived the testator, yet, as she in fact died in his life time, it might well be held that the devise to her, and the power intended to

be given her, becoming void before the decease of the testator, by her death, without issue, that provision in the will was to be regarded as if it had never existed. If the provision is inoperative as a devise and as a power of alienation, it certainly might be held to be inoperative to defeat the devise to the defendant, because, whether as an estate or a power, neither in fact ever vested or existed.

But here, as we have seen, there would have been no repugnancy if Huldah Straw had survived the testator, and taken the estate devised to her.

The devise to the defendant, which, if Huldah Straw had lived, would have constituted an executory devise, changed to a vested estate, with a right of possession, she being dead without issue at the testator's decease.

It has not been argued that the vesting of the estate in Huldah Straw was a condition precedent to render the devise to the defendant operative, nor is there any thing in the provisions of the will which could sustain such a position.

*Judgment for the defendant.*